LAWRENCE R. NASH, Corporation Counsel, Wood County
You advise that several years ago Wood County created Dexterville Park, which includes an artificial lake, and issued its promissory notes under sec. 67.12, Stats., to fund the project. A direct, annual, irrepealable tax was levied at the time of said borrowing for the purpose of retiring said indebtedness, the principal and interest will be completely amortized in 1973. At the time the Dexterville Park was originally developed, the county's parks were apparently operated under a county park commission subject to secs. 27.02 et seq., Stats. The county park commission system was abandoned in 1970, however, and operation of the county parks is now under a committee of the county board. Current 1970 census data indicates that the present population of Wood County is approximately 65,500.
You first inquire whether or not annual taxes levied by your county to pay the principal and interest on county indebtedness incurred under ch. 67, Stats., for the purpose of acquiring land for county parks and improving the same, must be included in determining the four-tenths of a mill annual tax levy limitation established under sec. 27.06, Stats.
Section 27.06, Stats., provides, in part, as follows:
"Mill-tax appropriation. The county board may annually, at the same time that other county taxes are levied, levy a *Page 126 
tax upon the taxable property of such county not exceeding four-tenths of a mill upon each dollar of the equalized valuation of the taxable property upon which other county taxes are levied and collected; provided, that a larger levy may be made for this purpose in counties having a population of 250,000 or more. The entire amount of such special tax shall be collected as other taxes are collected and paid into the county treasury as a separate and distinct fund, to be paid out only upon the order of the county park commission for the purchase of land and the payment of expenses incurred in carrying on the work of the [county park] commission. * * *"
In 30 OAG 207 (1941), our office discussed the mill rate limitation contained in sec. 27.06, Stats., at some length. Several points were made in that opinion which I feel bear directly on the question you now raise. First and foremost is the ultimate conclusion of the opinion set forth on page 211, as follows:
"It is therefore our opinion that a county having a county park systemand a county park commission may not raise funds by general taxation and expend them for general park purposes (except in the instances covered by the express special provisions above mentioned), and is limited in raising taxes and make expenditures for that purpose to the special tax provided by sec. 27.06 and in the manner therein set forth. As the tax provided thereby is to be used `for the purchase of land and the payment of expenses incurred in carrying on the work of the [county park] commission' it necessarily applies to all of the work of the commission which includes not only supervision but laying out, improving, maintaining and governing all county parks." (Emphasis added)
I concur with your view that this particular opinion appears to indicate that debt service on the type of borrowing you describe must be included within the four-tenths of a mill limitation set forth in sec.27.06, Stats. However, I cannot agree with your conclusion that the mill limitation set forth in that statute applies whether or not a county's parks are operated under a county park commission. *Page 127 
In 52 OAG 69 (1963), our office indicated that counties are authorized to operate county parks in any of four ways: by a county rural planning committee or by a county park board under the express provisions of sec. 27.015, Stats., under a county park commission pursuant to secs. 27.02 etseq., Stats., or under a county board committee established by the county board under the authority contained in sec. 59.15 (2) (b), Stats. Section59.15 (2) (b) reads:
"(b) The board may abolish, create or re-establish any such office, board, commission, committee, position or employment, and may transfer the functions, duties, responsibilities and privileges to any other agency including a committee of the board except as to boards of trustees of county institutions."
Your letter does not describe the method by which your county abandoned the county park commission and then commenced operation of your parks under "a committee of the county board." If your county board simply transferred the functions of the county park commission to a committee of your county board, the mill limitation contained in sec. 27.06, Stats., would presumably continue since it would be part of the total bundle of "functions, duties, responsibilities and privileges" being transferred. If, on the other hand, your county board acted to abolish the county park commission and created a county rural planning committee instead, under the express provisions of sec. 27.015, Stats., it would then be my conclusion that the four-tenths of a mill limitation contained in sec.27.06, Stats., would no longer be applicable. Putting it another way, when a county is operating its parks under statutory provisions other than sec. 27.02 to sec. 27.065, Stats., relating to county park commissions, the mill limitation contained in sec. 27.06 is not applicable.
I also suggest you investigate whether the provisions of sec. 59.07
(66), Stats., have any application to the operations currently contemplated at Dexterville Park. This statute reads as follows:
"IMPROVEMENT OF ARTIFICIAL LAKES. Appropriate money for the purpose of maintaining, dredging and improving any artificial lake existing on July 1, 1955, all or a portion of *Page 128 
which is adjacent to or within a county park, and for the acquisition of land required in connection therewith, without regard to the limitation imposed by s. 27.06."
You further advise, as background to your second question, that a relatively small parcel of land with buildings thereon originally purchased for the Dexterville Park development is now being sold by the county to a private purchaser. You, therefore, inquire whether the proceeds of this sale can be used for capital improvement in the county parks in addition to moneys generated by a maximum annual levy of four-tenths of a mill.
Section 27.05 (3), Stats., which sets forth the powers of the county park commission, does provide in part that no land acquired by the commission, in the name of the county, for park purposes may be disposed of by the county without the consent of said commission and that all moneys received for any such lands shall be paid into the county park fund referred to in the above quoted portion of sec. 27.06, Stats. Therefore, even if your county were still operating with a county park commission, I would have no difficulty in concluding that the proceeds from such sale could be paid into the county park fund and used for capital improvement in the county parks in addition to the moneys generated by a maximum annual levy of four-tenths of a mill. Furthermore, as pointed out in my answer to your first question, the mill limitation does not apply to a county rural planning committee operating under sec. 27.015, Stats. The county board of any county operating under that section would be authorized to make the proceeds of the sale available to said committee for capital improvements in the county parks as long as the county board adheres to the requirements of sec. 65.90, Stats., in making such funds available.
RWW:JCM *Page 129